FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

25  PM 1: 39

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | |
| *Plaintiff,* | |
| v. | Civil Action No. ELH-15-3462 |
| 252.071 ACRES MORE OR LESS, IN BALTIMORE COUNTY, MARYLAND, ET AL. | |
| *Defendants.* | |

\* \* \*

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | |
| *Plaintiff,* | |
| v. | Civil Action No. ELH-15-3560 |
| 14.7657 ACRES MORE OR LESS, IN BALTIMORE COUNTY, MARYLAND, ET AL. | |
| *Defendants.* | |

**MEMORANDUM OPINION**

In this Memorandum Opinion, I consider motions for partial summary judgment and for immediate access to easements in two consolidated cases brought by Columbia Gas Transmission, LLC ("Columbia"), a natural gas company, against numerous landowners in Baltimore County, Maryland.

On November 13, 2015, Columbia filed a Complaint in Condemnation, supported by voluminous exhibits, naming 56 defendant landowners. ELH-15-3462 (hereinafter, "Case 1"), ECF 1; *see* ECF 1-1 through ECF 1-81. Then, on November 23, 2015, Columbia filed a

Complaint in Condemnation against Greenspring Elseroad Associates, LP ("Greenspring"), another landowner in Baltimore County, also supported by exhibits. ELH-15-3560 (hereinafter, "Case 2"), ECF 1; *see* ECF 1-1 through ECF 1-5.[1] By Order of February 22, 2016 (Case 1, ECF 150; Case 2, ECF 31), I granted Columbia's unopposed Motion to Consolidate Case 1 and Case 2. Case 1, ECF 121; Case 2, ECF 18.[2]

On November 21, 2013, the Federal Energy Regulatory Commission ("FERC") issued a Certificate of Public Convenience and Necessity (the "FERC Certificate") to Columbia, authorizing it "to construct and operate [the Line MB] pipeline and appurtenant facilities in Baltimore and Harford Counties, Maryland (Line MB Expansion Project)." ECF 1-40 at 2.  In both suits, Columbia seeks to exercise the power of eminent domain, pursuant to the Natural Gas Act, 15 U.S.C. § 717 ("NGA"), to acquire permanent and temporary construction easements over real property, so as to construct and operate Line MB, a natural gas pipeline.  Line MB would supplement and provide redundancy with respect to an existing pipeline, Line MA.

Initially, under the FERC Certificate, construction of the MB pipeline was to be completed by November 21, 2015.  ECF 1-40 ¶ 152(B)(1).  On September 30, 2015, FERC granted Columbia's "request for an additional two-year extension of time, until November 21, 2017, to complete construction and make the facilities available for service."  ECF 1-41 at 2. Although Line MB will be approximately 21 miles long, this case concerns only a portion of Line MB, about eight miles in length. *See* Plaintiff's Exhibit 7.

---

[1] Greenspring was originally a defendant in Case 1.  ECF 1 ¶ 23.  By Order of November 20, 2015 (ECF 21), I granted Columbia's "Notice of Voluntary Dismissal of Defendants [sic] Greenspring Elseroad Associates LP" (ECF 15).

[2] Case 1 is designated as the lead case, and all subsequent filings are in that case only. Unless otherwise indicated, all citations to the record refer to Case 1.

Subsequent to filing suit, Columbia voluntarily dismissed its claims as to twenty-seven of the defendants, presumably because Columbia reached settlement agreements with those defendants regarding the easements. ECF 10 through ECF 15; ECF 69, ECF 70, ECF 73, ECF 74, ECF 77, ECF 99, ECF 105, ECF 107, ECF 126, ECF 127, ECF 148; ECF 115-1 at 2 n.2 ("Since filing its Complaint in Condemnation, Columbia has continued to negotiate with the landowners and reached additional agreements."). Thirty defendants remain. I shall sometimes refer to them as the "Landowners."

As to Case 1, on January 11, 2016, Columbia filed a Motion for Partial Summary Judgment ("MPSJ," ECF 115) and a Motion for Immediate Possession of the Easements ("MIP," ECF 116), both supported by a memorandum of law (ECF 115-1; ECF 116-1) and six exhibits. ECF 115-2 through ECF 115-7; ECF 116-2 through ECF 116-7. Twenty-two defendants, who own or lease thirteen tracts of land, oppose Columbia's motions, and some of the oppositions were filed jointly. In particular, the following defendants filed oppositions: Garrison Forest Associates, LP ("Garrison Forest") and Louis and Mary Hogan jointly oppose the MPSJ (ECF 123) and the MIP (ECF 124); Judith S. Cardin; Stephen and Linda Scherr; Stephen G. Chandler, Trustee of the Stephen G. Chandler Revocable Trust; and Avery Chandler, Trustee of the Avery Chandler Revocable Trust, jointly oppose the MPSJ (ECF 142) and the MIP (ECF 143); Steven and Lisa Luray; Dean and Jill Fiergang; Chanan and Adriana Levy; Robert and Joan Iwanowski; Timothy S. Wang and Mary M. Herndon; and Benjamin Lowentritt and Lee Snyder jointly oppose the MPSJ (ECF 133) and the MIP (ECF 132); Timothy A. Waire, Jr. and Cynthia E.

Rodgers-Waire oppose the MPSJ (ECF 135) and the MIP.  ECF 136.[3]  Some of the oppositions are accompanied by exhibits.

As to Greenspring, Columbia filed a MPSJ (Case 2, ECF 15) and a MIP (Case 2, ECF 16) on January 11, 2016.  The motions are substantially identical to Columbia' filings in Case 1. (ECF 115, ECF 116).  Greenspring has filed an opposition to the MPSJ (Case 2, ECF 26) and an opposition to the MIP.  Case 2, ECF 27.  Greenspring's oppositions adopt the reasoning of the defendants in Case 1, as set forth in ECF 123; ECF 124; ECF 132; ECF 133; ECF 135; and ECF 136.

I shall refer to all of the above-referenced defendants collectively as the "Opposing Defendants."

Six defendants never opposed or no longer oppose Columbia's motions, but remain in the case: David M. and Jodi K. Grossman; Stevenson University; Five Oaks Properties, LLC ("Five Oaks");[4] and Nicholas J. Sabie and Patricia Ann Boyle.[5]  *See* ECF 146, ECF 152    One landowner, Jeffrey Strzelczyk, was served December 5, 2015, and has not answered.  ECF 91. On January 28, 2016, the Clerk granted Columbia's Motion for Entry of Default as to Mr. Strzelczyk.  ECF 134.

---

[3] Rodgers-Waire is an attorney representing herself and her spouse.  She filed a "Consolidated Memorandum in Support of Defendants' Opposition to Motion for Partial Summary Judgment and Motion for Immediate Possession." *See* ECF 135-1; ECF 136-1.

[4] By letter to the Court dated February 18, 2016, Five Oaks stated, ECF 146 at 1: "Five Oaks is the ground lessor under a ground lease with 43 years remaining in the term, and the rent will not be significantly abated by the acquisition. The primary party in interest is Defendant, Garrison Forest Associates, LP, the ground lessee with a possessory interest for the next 43 years."

[5] By letter to the Court of February 22, 2016 (ECF 152), Mr. Sabie and Ms. Boyle withdrew their opposition to the MPSJ and the MIP. *See* ECF 130.

On February 12, 2016, Columbia filed a Consolidated Reply to the various defense submissions.  ECF 144; Case 2, ECF 28.

The Court held an evidentiary hearing on February 23, 2016.[6]  Counsel for Columbia and attorneys for Garrison Forest; Mr. and Ms. Hogan; Mr. and Ms. Luray; Mr. and Ms. Fiergang; Mr. and Ms. Iwanowski; Mr. Waire and Ms. Rodgers-Waire; Mr. Wang and Ms. Herndon; Benjamin Lowentritt and Lee Snyder; Chanan and Adriana Levy; and Greenspring appeared at the hearing.[7]

On February 25, 2016, in response to issues discussed at the hearing, Mr. and Ms. Fiergang; Mr. and Ms. Iwanowski; Mr. and Ms. Luray; Chanan and Adriana Levy; Benjamin Lowentritt and Lee Snyder; and Mr. Wang and Ms. Herndon filed a "Supplemental Response in Opposition to Columbia Gas Transmission LLC's Motions for Partial Summary Judgment and for Immediate Possession of the Easements."  ECF 155.

Thereafter, on March 7, 2016, Columbia filed "Columbia Gas Transmission LLC's Supplemental Information and Updated Plats in Support of its Motions for Partial Summary Judgment and Immediate Possession and in Opposition to Defendants' Supplemental Response" (ECF 160), which is accompanied by several exhibits.  ECF 160-1; ECF 160-2.  On March 9, 2016, Columbia filed "Columbia Gas Transmission, LLC's Amendment to Supplemental

---

[6] No transcript of the hearing is available.  Accordingly, I rely on my notes of testimony and argument adduced at the hearing.

[7] To my surprise, counsel for Ms. Cardin, Mr. and Ms. Scherr, and the Chandlers did not appear at the hearing, although counsel had filed an opposition on their behalf to both the MPSJ and MIP.  The Court was informed that the lawyer had recently been appointed to the bench in Baltimore County.  Because the Opposition of these parties, filed by counsel, had adopted the arguments of other defendants (see ECF 142, ¶ 1; ECF 143, ¶ 1), for whom an attorney was present, I proceeded with the hearing.  Since the hearing, the attorney for Garrison Forest and Mr. and Ms. Hogan has also entered an appearance for Ms. Cardin, Mr. and Ms. Scherr, and the Chandlers.  ECF 158.

Information and Updated Plats in Support of its Motions for Partial Summary Judgment and Immediate Possession and in Opposition to Defendants' Supplemental Response" (ECF 161), which is accompanied by several exhibits. ECF 161-1.

On March 15, 2016, Mr. and Ms. Fiergang; Mr. and Ms. Iwanowski; Mr. and Ms. Luray; Chanan and Adriana Levy; Benjamin Lowentritt and Lee Snyder; and Mr. Wang and Ms. Herndon filed a "Supplemental Response . . . to Columbia Gas Transmission, LLC's Supplemental Information and Updated Plats, Etc." ECF 162.

For the reasons that follow, I will grant the MPSJ. And, as discussed, *infra*, upon Columbia's payment into the Registry of the Court of a sum equal to its estimation of the value of the takings, plus the posting of a cash bond or surety bond to cover potential excess damages, I will grant the MIP.

## I. STANDARD OF REVIEW – SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. Ltd. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* There is a genuine issue as to

material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see Dulaney v. Packaging Corp. of Am.,* 673 F.3d 323, 330 (4th Cir. 2012).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts' showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied,* 514 U.S. 1042 (2004); *see also Celotex,* 477 U.S. at 322–24. Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. Ltd.,* 475 U.S. at 587; *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore,* 721 F.3d 264, 283 (4th Cir. 2013); *FDIC v. Cashion,* 720 F.3d 169, 173 (4th Cir. 2013).

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts,* 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French,* 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States,* 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir. 2002).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *Anderson,* 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd,* 718 F.3d 308, 313 (4th Cir. 2013). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

## II. DISCUSSION

### A. Motions for Partial Summary Judgment

In Columbia's MPSJ (Case 1, ECF 115; Case 2, ECF 15), it seeks an order confirming its right to acquire easements over the properties, as well as the right of ingress and egress with regard to temporary easements. *See also* Case 1, ECF 115-1 at 3; Case 2, ECF 15-1 at 2-3. In particular, Columbia seeks a "permanent and exclusive easement and right-of-way to construct, operate, maintain, replace, repair, remove, or abandon Line MB, for a total of fifty feet (50') in width, measured twenty five feet (25') to the center of Line MB on each side thereof . . . ." Case 1, ECF 1 ¶ 50; *see also* Case 2, ECF 1 ¶ 15. Additionally, Columbia seeks temporary construction easements of "twenty-five (25) to fifty (50) feet on either side of and adjoining the permanent easements [which] serve the purpose of enabling Columbia to construct Line MB or to later relocate the pipeline, including restoration or clean-up activities." Case 1, ECF 1 ¶ 49; *see also* Case 2, ECF 1 ¶ 14. The FERC Certificate notes, ECF 1-40 ¶ 114: "Columbia's 75-foot construction right-of-way and 50-foot permanent easement widths are typical widths used industry-wide to ensure safe working conditions minimize encroachment on the pipeline."

The Natural Gas Act and Federal Rule of Civil Procedure 71.1 frame the analysis.

The NGA, 15 U.S.C. § 717f(h), states:

> When any holder of a certificate of public convenience and
> necessity cannot acquire by contract, or is unable to agree with the
> owner of property to the compensation to be paid for, the necessary
> right-of-way to construct, operate, and maintain a pipe line or pipe
> lines for the transportation of natural gas, and the necessary land or
> other property, in addition to right-of-way, for the location of
> compressor stations, pressure apparatus, or other stations or
> equipment necessary to the proper operation of such pipe line or
> pipe lines, it may acquire the same by the exercise of the right of
> eminent domain in the district court of the United States for the
> district in which such property may be located, or in the State
> courts.

Fed. R. Civ. P. 71.1 provides:

(a) Applicability of Other Rules. These rules govern proceedings to condemn real
and personal property by eminent domain, except as this rule provides otherwise.

. . .

(c) Complaint.

. . .

> (2) *Contents.* The complaint must contain a short and plain statement of
> the following:
>
>> (A) the authority for the taking;
>>
>> (B) the uses for which the property is to be taken;
>>
>> (C) a description sufficient to identify the property;
>>
>> (D) the interests to be acquired; and
>>
>> (E) for each piece of property, a designation of each defendant who
>> has been joined as an owner or owner of an interest in it.

"Anyone who wishes to construct a natural gas pipeline in the United States must first

obtain a certificate of public convenience and necessity from . . . FERC . . . , the federal agency

responsible for supervising and coordinating the production of energy in the United States."

*Alliance Pipeline L.P. v. 4.360 Acres of Land, More or Less, in S/2 of Section 29, Twp. 163 N.,*

*Range 85 W., Renville Cnty., N.D.*, 746 F.3d 362, 364 (8th Cir. 2014) (citing 15 U.S.C. §

717f(c)–(e)).  If the recipient of a certificate requires easements to construct its pipeline, and cannot acquire them by contract, the recipient may acquire the easements "by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts." 15 U.S.C. § 717f.[8]

"A district court's role in proceedings involving FERC certificates is circumscribed by statute." *Millennium Pipeline Co., L.L.C. v. Certain Permanent & Temp. Easements*, 777 F. Supp. 2d 475, 481 (W.D.N.Y. 2011), *aff'd*, 552 F. App'x 37 (2d Cir. 2014). The district court's role is simply to evaluate the scope of the certificate and to order condemnation of property as authorized in the certificate. *USG Pipeline Co. v. 1.74 Acres in Marion Cnty., Tenn.*, 1 F. Supp. 2d 816, 821 (E.D. Tenn. 1998). Disputes over the reasons and procedures for issuing certificates of public convenience and necessity must be brought to the FERC. 15 U.S.C. § 717r(a). Appeals may thereafter be brought to a United States Court of Appeals. 15 U.S.C. § 717r(b). Thus, when a landowner contends that the certificate holder is not in compliance with the certificate, that challenge must be made to FERC, not the district court.

The court's role is thus a limited one. In *Guardian Pipeline, L.L.C. v. 529.42 Acres of Land*, 210 F. Supp. 2d 971 (N.D. Ill. 2002), the court explained, *id.* at 974 (internal citations omitted):

> The jurisdiction of this court is limited to evaluating the scope of the FERC Certificate and ordering condemnation as authorized by that certificate. The validity and conditions of the FERC Certificate cannot be collaterally attacked in district court. Review of the validity of the certificate is the exclusive province of the appropriate court of appeals. This court's role is mere enforcement.

---

[8] Of course, the power of eminent domain implicates the Fifth Amendment to the United States Constitution. It states, in part: "[P]rivate property [shall not] be taken for public use, without just compensation."

As noted, a holder of a FERC certificate of public convenience and necessity that "cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas . . . may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located . . . ." 15 U.S.C. § 717f(h).

It is undisputed that Columbia holds a FERC Certificate. It is also clear that Columbia has proposed, but has not reached, private agreements with the Opposing Defendants, although the proposed terms of those agreements do not necessarily correspond to the terms of the FERC Certificate. *See* ECF 115-1 at 6-7 (averring that Columbia sent offers to the Landowners, who did not accept those offers). The Opposing Defendants lodge several objections to Columbia's MPSJ and MIP.

### 1.

The Opposing Defendants contend that Columbia failed adequately to identify the proposed easements, as required by Fed. R. Civ. P. 71.1. *See* ECF 123 at 4-5, ECF 135-1 at 7; *see also* ECF 133 at 12. In other words, they claim the property descriptions provided by Columbia are legally deficient. Although Columbia may have provided less detail than was provided in the cases on which it relies, the Opposing Defendants have not cited any federal cases—nor has the Court found any—in which condemnation was denied because the description of the easements was insufficient. Moreover, the requirements of Fed. R. Civ. P. 71.1 are not as stringent as the Opposing Defendants suggest.

In general, Columbia provided the same type of information for each tract of land over which it seeks an easement. The Complaint includes the parcel number and liber folio number of

each property, as well as the precise size of the proposed easements. ECF 1 ¶¶ 4-40, 52.

Columbia also attached to its Complaint two types of maps purporting to depict each of the

proposed easements. One set of maps identifies each particular lot for which Columbia seeks an

easement relative to adjacent properties and major roads. *See, e.g.*, ECF 1-2. The second group

of maps contains diagrams purporting to show the path of the pipeline and the proposed

easement on each tract of affected land. *See, e.g.,* ECF 1-42.

Moreover, after the hearing, Columbia submitted "revised plats (['']Revised Plats[']) with

additional detail and information that addresses the [Opposing] Defendants' alleged concerns."[9]

ECF 160 at 3; *see* ECF 160-2 at 12-41. Columbia avers, ECF 160 at 3-4:

> The Revised Plats also provide the following additional information: (1) a bar
> scale that depicts the actual distances on the plat, (2) the location of the existing
> Line MA pipeline, (3) the location of the Line MB easement as approved by
> FERC, and (4) the distance between the existing Line MA pipeline and the Line
> MB easement, (5) the distance between the Line MA pipeline and the Line MB
> easement at the corners for some of the property, (6) the distance between the
> existing Line MA pipeline and some of the nearby buildings, (7) the distance
> between the existing Line MA pipeline and some of the nearby wells, and (8)
> additional property boundary features.

To be sure, these diagrams do not contain a surveyor's certificate or a metes and bounds

description of the properties in issue. In fact, the diagrams submitted with the Complaint

expressly state, ECF 1-42 at 2: "Provided for general discussion purposes only. This is not a

survey product. It should not be used for authoritative definition of legal boundary, or property

title."

The Revised Plats contain a similar disclaimer. The Revised Plats provide, ECF 160-2 at

41: "The proposed and existing easements combined constitute the Permanent Right-of-Way

---

[9] Columbia subsequently filed "Revised Plats" for several tracts that "were inadvertently
omitted from Columbia's supplement memorandum" (ECF 160). ECF 161 ¶ 3; *see* ECF 161-1
at 4-11.

Area. All measurements and depictions are provided for general discussion purposes only. This is not a survey product. This should not be used for authoritative definition of legal boundary, or property title."

The information provided with regard to the property owned by Mr. and Ms. Iwanowski, and the location of the proposed easements constitutes a representative example of the descriptions provided by Columbia. The Complaint states, ECF 1 ¶¶ 21 and 52:

> Robert and Joan M. Iwanowski are residents of Maryland and are record owners of that certain parcel of real property located in the Eighth Election District, described as Parcel Identification Number 23-00-001202, as is more particularly described in that certain deed recorded in Liber 14855, Folio 264, recorded among the land records of Baltimore County, Maryland, comprising 12.5143 acres, more or less . . . .
>
> * * *
>
> Columbia seeks to acquire the following rights, more or less, from the Landowners for the purpose of extending Line MB on or near the Properties:
>
> * * *
>
> *Iwanowski Property*
>
> (a) Permanent Easement                    1.2417 acres
>
> (b) Temporary Construction Easement        0.5069 acre
>
> (c) Additional Temporary Workspace         0.2893 acre

In addition, Columbia appended diagrams that depict the location of the pipeline and the proposed easements on Mr. and Ms. Iwanowski's property. *See* ECF 1-21; 1, ECF 1-62. The first is a map of property lots in Baltimore County, with Mr. and Ms. Iwanowski's property highlighted. ECF 1-21 at 2. The second is a drawing of Mr. and Ms. Iwanowski's property, including the location of the pipeline and proposed easements. ECF 1-62 at 2. Columbia's Revised Plat as to Mr. and Ms. Iwanowski's property provides further information, including the location of the Line MB easement as approved by FERC; the distance between the existing Line

MA pipeline and the Line MB easement; and the distance between the existing Line MA pipeline and a building. ECF 160-2 at 17.

As noted, similar maps are attached to the complaints for all Landowners. *See* ECF 1-1 through ECF 1-38, ECF 1-42 through ECF 1-80; Case 2, ECF 1-1, ECF 1-4. Columbia's subsequent submissions (ECF 160, ECF 161) provide Revised Plats for each parcel of property owned by a remaining defendant.

Rule 71.1 sets forth the requirements for a complaint in condemnation. It requires plaintiffs to include in the complaint a short and plain statement of:

> (A) the authority for the taking; (B) the uses for which the property is to be taken; *(C) a description sufficient to identify the property; (D) the interests to be acquired*; and (E) for each piece of property, a designation of each defendant who has been joined as an owner or owner of an interest in it.

(Emphasis added).

Of import here, Rule 71.1 does not explicitly require any particular type of map, drawing, or measurement of the interests to be acquired. Nor does it require a survey adequate for recording in local land records.

Columbia refers to several cases in support of its argument that the information it has provided is sufficient to satisfy Rule 71.1. *See* ECF 144 at 5-6. In *Guardian Pipeline, LLC, supra*, 210 F. Supp. 2d at 975, the court determined that "legal descriptions and plat maps of the proposed easements" were sufficient to satisfy the plaintiff's burden to include a description of the property. *Id.* at 975. Similarly, in *Hardy Storage Co., LLC v. An Easement to Construct, Operate & Maintain 12-Inch & 20-Inch Gas Transmission Pipelines Across Properties in Hardy Cnty., W.Va.*, 2006 WL 1004719 (N.D.W. Va. Apr. 12, 2006), the court found that exhibits attached to the plaintiff's complaint that included "brief explanations of the rights to be condemned and drawings" were "very specific with regard to sizes and locations of the

14

easements and rights-of-way in questions." *Id.* at *3. Although the explanations were "brief" in regard to descriptions of property interests, the court observed that reading the explanations and drawings in conjunction very clearly identified "the sizes of the easements and rights-of-way in question," and therefore the complaint satisfied the requirements of Rule 71.1. *Id*; *see also Southern Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368, 1375 (11th Cir. 1999) (finding that property described with legal description and plat map in conjunction with parties' decision to walk centerline of proposed easement within property boundaries is adequate to describe taking); *E. Tenn. Natural Gas, LLC v. 1.28 Acres in Smyth Cnty., Va.*, 2006 WL 1133874, at *11 (W.D. Va. Apr. 26, 2006) ("[T]he Legal Descriptions along with the attached plats meet the requirements" of Fed. R. Civ. P 71.1.).

The information Columbia has provided in this case may be less detailed than that provided in the above-cited cases. Unlike in *Guardian Pipeline*, for instance, Columbia has not provided legal descriptions of the proposed easements in addition to its maps; in fact, Columbia itself notes that its drawings of the easements are not legal boundaries. *See, e.g.*, ECF 1-62 at 2; ECF 160-2 at 41. Furthermore, it is unclear whether the maps provided here are as detailed as the maps in *Hardy Storage*, which the court described as "very specific." Nonetheless, the information provided by Columbia satisfies Rule 71.1's requirement of "a short and plain statement of the interests to be acquired."

Columbia has identified the parcel number and liber folio number for each property, has provided a lot and block map of each property, has listed the precise size of each easement, and has submitted diagrams showing the location of the pipeline and the proposed easement on each property. In light of this information, the Opposing Defendants cannot convincingly claim that they are not on notice of the location and size of the proposed easements. And, the Opposing

Defendants have not identified any cases in which a comparable description of proposed easements under the NGA was held to be inadequate.

In addition, I am unpersuaded by the defense argument that Columbia's submissions to the Court are inadequate because they are not sufficiently detailed to be recorded in the local land records and thus could result in a cloud on the Landowners' title. *See* ECF 162 at 4 ("When there is a cloud placed on title by an insufficient and casual description for an easement, that creates an additional burden on the property owner to clarify the exact location of the easement, a task which is impossible when referring to the plats that Columbia alleges it uses in its take cases."). Columbia counters, ECF 160 at 3:

> Columbia's [sic] has used plats that are virtually identical to the Original Plats [attached to the Complaint] to record the numerous easements that it acquired as part of the Line MB Project. . . . In fact, several of these landowners have sold their property subject to these plats. . . . As such, there is no basis to argue that the plats are a cloud on title.

*See* ECF 160-2 at 2-3, ¶¶ 7-8, "Supplemental Declaration of Michael S. McClain."

Even assuming that Columbia might need to produce more detailed maps in order to record its easements in the local land records, Rule 71.1 does not require the filings to satisfy local recording requirements.

**2.**

Mr. and Ms. Luray; Mr. and Ms. Fiergang; Mr. and Ms. Iwanowski; Mr. Wang and Ms. Herndon; Benjamin Lowentritt and Lee Snyder (ECF 133 at 12-16); Mr. Waire and Ms. Rodgers-Waire (ECF 135-1 at 7-9); and Greenspring (Case 2, ECF 26 ¶ 2) also argue that Columbia failed to negotiate with them before bringing suit, and thus did not demonstrate an

inability to acquire by contract or agreement, as required by the NGA.[10]   The crux of their argument is that Columbia failed to conform their negotiations to terms consistent with the FERC Certificate.  They assert, ECF 133 at 15:   The NGA "implies, if not directly mandates, that Columbia negotiate for the acquisition of exactly what it is entitled to get if it proceeds under its eminent domain authority, that is, an area which meets the authority granted by the FERC Certificate for exactly the land which is 'necessary' to construct the gas pipeline at issue at the time of the negotiation and no more than what is 'necessary.'"  (Underlining in original.) *See also* ECF 135-1 at 8 ("Columbia has never negotiated with the Waires for a right-of-way to construct only a pipeline for the transport of natural gas and certainly not one within the restrictions placed upon Columbia in the FERC Certificate.").  Rather, the Opposing Defendants claim that, prior to filing suit, Columbia sought to acquire "Right of Way Agreements" ("ROW Agreements"), which would have granted Columbia rights beyond those anticipated by the FERC Certificate, to include, *inter alia*, the right to install multiple pipelines and telecommunications equipment. *See* ECF 133 at 14-16; ECF 135-1 at 8-9; *see also* ECF 133-1 at 11-15, 43-47; ECF 133-2 at 7-10, 27-31; ECF 133-3 at 14-17, 30-34, 43-47; ECF 133-4 at 7-11, 26-30; ECF 133-5 at 23-32, 51-55, 61-65; ECF 133-6 at 12-16, 31-35; ECF 135-4.

These defendants maintain that because the ROW Agreements exceeded the scope of the FERC Certificate, Columbia has not satisfied a prerequisite to its suits. *See* ECF 133 at 16; ECF

---

[10]   Garrison Forest and Mr. and Ms. Hogan do not contend that Columbia failed to negotiate with them for the precise easements contemplated by the FERC Certificate. *See* ECF 123. Garrison Forest submits, however, ECF 124 at 5: "Columbia has not even made an offer to Garrison Forest for its property rights as long-term ground lessee of the property owned by Five Oaks Properties, LLC."  As noted, *supra*, note 4, Five Oaks does not oppose Columbia's MPSJ and MIP and avers, ECF 146 at 1: "The primary party in interest is Defendant, Garrison Forest Associates, LP, the ground lessee with a possessory interest for the next 43 years."  At the hearing, Michael McClain testified that Columbia attempted to negotiate with both Five Oaks and Garrison Forest, but that neither Five Oaks nor Garrison Forest was willing to negotiate.

135-1 at 8. They also aver that, on the eve of filing suit, Columbia sent defendants "final offer" letters, which sought to obtain even greater property rights from the Landowners than was contemplated by Columbia's previous offers. *See* ECF 133 at 14, ECF 135-1 at 8-9.[11]

Columbia contends that, before filing suit it "engaged in extensive negotiations with all of the landowners" who might be impacted by the construction of Line MB. ECF 115-1 at 6. It relies, *inter alia*, on the Declaration of Michael McClain, a Project Land Manager for Columbia,[12] who avers that Columbia negotiated with the Landowners, including all of the remaining defendants. *See* ECF 115-5 ¶ 5. Similarly, at the hearing, Mr. McClain testified that it is Columbia's practice to negotiate for ROW Agreements that exceed the scope of a FERC certificate. Further, he testified that, during the course of the negotiations pertinent to this case, Columbia provided all the Landowners in this case with proposed ROW Agreements that sought rights beyond what the FERC Certificate granted.

Columbia maintains that, under the National Gas Act, it is only required to show that it has been unable to acquire the property by contract or agreement with the owner, and that it is not precluded from seeking to acquire by negotiation more rights than allowed under the FERC. *See* ECF 144 at 7. I agree with Columbia.

Regardless of the terms proposed through negotiations, Columbia's right to condemn is limited to the terms of the FERC Certificate. But, the statute does not prescribe the manner in

---

[11] Mr. Waire and Ms. Rodgers-Waire submit (ECF 135-1 at 5): "Columbia has not made any attempt to negotiate in good faith with the Waires regarding the larger property area it now seeks to condemn." At the hearing, however, various defendants seemed to concede that Columbia is not required to negotiate in "good faith."

[12] Whether Mr. McClain works for Columbia or is a subcontractor for Columbia is unclear. In his Declaration (ECF 115-5), McClain states that he is employed by Columbia. *See id.* ¶ 3 ("I am employed by Columbia Gas Transmission, LLC . . . as Project Land Manager."). At the hearing, Mr. McClain testified that he was a Land Manager for Contract Land Staff, LLC, a subcontractor of Columbia. This discrepancy is not material to the issues, however.

which negotiations must proceed or the form that an offer to purchase the easements must take. Rather, "the Natural Gas Act merely requires that Columbia Gas be unable to come to an agreement." *Columbia Gas Transmission, LLC v. 370.393 Acres, More or Less in, Baltimore Cty., Maryland Located on Parcel Identification No. 20-00-013434, Owned By Williams*, RDB-14-0469, 2014 WL 5092880, at *3 (D. Md. Oct. 9, 2014) (citing *E. Tenn. Nat. Gas, LLC v. 1.28 Acres in Smyth Cty., Va.*, No. CIV.A. 1:06-CV-00022, 2006 WL 1133874, at *10 (W.D. Va. Apr. 26, 2006) ("I find that nothing in the Act or Federal Rule of Civil Procedure 71A[13] requires the condemnor to negotiate in good faith. All the Act requires is a showing that the plaintiff has been unable to acquire the property by contract or has been unable to agree with the owner of the property as to the compensation to be paid.")).

### 3.

The Opposing Defendants also contend that Columbia is not entitled to prevail because its MPSJ and MIP seek rights beyond the scope of the FERC Certificate. ECF 123 at 2-4; ECF 133 at 17-18; ECF 135-1 at 6-7; *see* Case 2, ECF 26 ¶ 2. They cite Columbia's proposed ROW Agreements to support their claim that Columbia seeks to condemn more property than is permitted under the FERC Certificate. *See, e.g.*, ECF 123 at 2 ("The proposed Right of Way Agreement easement is excessive, as it purports to give Columbia rights that are not necessary to the project or contemplated by the FERC Certificate."); ECF 133 at 17 ("The proposed Maryland Amendment to Right of Way Agreement is excessive, as it purports to give Columbia rights that are not 'necessary' to the Project or contemplated by the FERC Certificate."); ECF 135-1 at 7 ("[T]he Motion should be denied because Columbia is seeking property rights far beyond its legal authority.").

---

[13] Fed. R. Civ. P. 71.1 was previously codified in Rule 71A.

Columbia counters that it seeks to condemn solely the property authorized by the FERC Certificate. ECF 144 at 6.

Columbia has only requested an order confirming its right to condemn pursuant to the terms of the FERC Certificate. Indeed, Columbia's MPSJ seeks "an order confirming its right to condemn the Properties pursuant to the authority conferred by 15 U.S.C. § 717f(h)." ECF 115-1 at 12. Because the MPSJ does not seek any rights beyond those permitted by the statute and the FERC Certificate, there is no merit to the Opposing Defendants' argument that Columbia seeks more than it is allowed under the Certificate.

Defendants' arguments in opposition to partial summary judgment do not withstand scrutiny. Therefore, Columbia is entitled to partial summary judgment.

### B. Motions for Immediate Possession of the Easements

In addition to its MPSJ, Columbia has filed a MIP which, if granted, would allow it to take possession of the easements prior to a trial to determine just compensation. *See* Case 1, ECF 116; Case 2, ECF 16. In this circuit, once a district court determines that a natural gas company possesses the right to condemn property under the NGA, the court may grant the company immediate possession in the form of a preliminary injunction, so long as the company establishes its entitlement to a preliminary injunction. *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 827–28 (4th Cir. 2004) (citations omitted).

The Opposing Defendants object to the grant of immediate possession on two principal grounds. First, they urge the court to rule that, notwithstanding *Sage*, immediate possession is unavailable under the NGA.[14]   Second, they argue that Columbia has not satisfied the requirements for a preliminary injunction.

---

[14] Garrison Forest and the Hogans do not join other defendants in requesting that the Court decline to follow *Sage*, 361 F.3d 808. *See* ECF 124 at 2-3.

I conclude that, under *Sage*, immediate possession is available to Columbia. Moreover, as discussed below, I am satisfied that Columbia has satisfied the requirements for a preliminary injunction.

### 1.

"The Natural Gas Act, like most statutes giving condemnation authority to government officials or private concerns, contains no provision for quick-take or immediate possession." *Sage*, 361 F.3d at 811. Despite the absence of a statutory right to immediate possession, Columbia asks the Court to exercise its equitable powers to grant a preliminary injunction allowing immediate possession. In other words, Columbia argues that (1) it has a substantive right to condemn the property (as argued in the MPSJ); and (2) it has satisfied the requirements for a preliminary injunction. Therefore, according to Columbia, it is entitled to exercise its right to condemn prior to a trial on just compensation, notwithstanding the absence of a statutory right of immediate possession. *See* ECF 116-1 at 7-13.

Many of the defendants contend that a judicial grant of immediate possession conflicts with Congress's decision not to include in the NGA an express statutory right to immediate possession, thereby violating separation of powers principles. *See, e.g.,* ECF 132 at 3-11. This argument was squarely rejected by the Fourth Circuit in *Sage*, 361 F.3d 808.

Although many of the defendants appear to acknowledge that the *Sage* Court rejected an argument substantially identical to theirs, they nonetheless ask this Court to reject the *Sage* decision because "Supreme Court decisions requiring separation of powers take precedence over the *Sage* court decision, which is clearly in conflict. . . . The Defendants submit that the *Sage* court's decision should, accordingly, not be followed by this court." ECF 132 at 9. I cannot disregard binding Fourth Circuit precedent.

In *Sage*, the Fourth Circuit reviewed the "mechanics of how the federal power of eminent domain is usually exercised." *Sage*, 361 F.3d at 820. The late Judge Michael, joined by Judges Niemeyer and Motz, explained for the Court, *id.* at 821 (citations, quotation marks, and some alterations omitted):

> Congress sometimes exercises the power of eminent domain directly by enacting a statute that appropriates specific property. Congress's normal practice, however, is to delegate the power of eminent domain to government officers who may condemn property in the name of the United States for public use. And Congress may . . . grant condemnation power to private corporations executing works in which the public is interested.

The *Sage* Court recognized that an eminent domain case generally proceeds down one of two procedural paths: "straight condemnation" or "quick-take." *Id.* Under the first method, "the action usually proceeds to a determination of just compensation and final judgment before the condemnor takes possession." *Id.* By contrast, under the "quick-take" method, which is prescribed mainly in the Declaration of Taking Act ("DTA"), 40 U.S.C. § 3114, applicable to the government, "the government may take possession of the condemned property at the beginning of the case." *Sage*, 361 F.3d at 821. Critically, the DTA only applies to condemnation proceedings "'brought by and in the name of the United States,'" making it inapplicable in *Sage*, *id.* (quoting 40 U.S.C. § 3114(a)), and inapplicable here.

In this context, the *Sage* Court considered whether "a court may use its equitable powers to grant a preliminary injunction allowing immediate possession when there is no provision for that relief in the NGA or Rule 71A." *Id.* at 823. The *Sage* Court reasoned that although the NGA does not provide a statutory right of immediate possession, a gas company may obtain immediate possession through the equitable remedy of a preliminary injunction. *Id.* at 818. In its view, the landowners "overlook[ed] the preliminary injunction remedy provided in the

Federal Rules of Civil Procedure that were adopted with the tacit approval of Congress." *Id.* at

824. The Fourth Circuit continued, *id.*:

> Rule 71A provides . . . that the regular rules of procedure apply to any subject not covered by the special rule. Fed. R. Civ. P. 71A(a). Under the rules, then, a gas company with condemnation power under the NGA may apply under Rule 65(a) for a preliminary injunction awarding immediate possession. Congress has never given any indication that it disapproves of this procedure. . . . Indeed, because Congress has not acted to restrict the availability of Rule 65(a)'s equitable (injunctive) remedy in an NGA condemnation, we conclude that the rule applies. *See Mitchell v. Robert De Mario Jewelry, Inc.,* 361 U.S. 288, 291 (1960) ("Equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command.").

Further, the Court noted that the preliminary injunction process contains procedural

safeguards that are comparable to those safeguards that apply in the context of a quick-take

proceeding under the DTA. *Id.* In particular, it said, *id.* at 826 (internal citations omitted):

> In an NGA condemnation where early possession is granted to a gas company, the landowner is protected . . . by "the rule that title does not pass until just compensation has been ascertained and paid." Therefore, if the gas company's deposit (or bond) is less than the final compensation awarded, and the company fails to pay the difference within a reasonable time, "it will become a trespasser, and liable to be proceeded against as such." Likewise, if a FERC-regulated gas company was somehow permitted to abandon a pipeline project (and possession) in the midst of a condemnation proceeding, the company would be liable to the landowner for the time it occupied the land and for any "damages resulting to the [land] and to fixtures and improvements, or for the cost of restoration."

Thus, the Opposing Defendants' argument has been squarely rejected by the Fourth

Circuit. Accordingly, it is rejected here.

### 2.

Because the remedy of a preliminary injunction is available to Columbia, the next

question is whether Columbia has demonstrated that it is entitled to such injunctive relief.

As the Fourth Circuit observed in *Centro Tepeyac v. Montgomery County*, 722 F.3d 184,

188 (4th Cir. 2013), a preliminary injunction is "an extraordinary remedy involving the exercise

of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Id.* (quotation marks and citation omitted). The movant may obtain such extraordinary relief only on a clear showing of entitlement. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

In order to obtain a preliminary injunction under Rule 65(a), the movant must satisfy all four factors articulated by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008): (1) that the movant is "likely to succeed on the merits," (2) that the movant is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that the "balance of equities tips in [the movant's] favor," and (4) that "an injunction is in the public interest." *Accord Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011); *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part on remand*, The Real Truth About Obama, Inc. v. F.E.C., 607 F.3d 355 (4th Cir. 2010) (per curiam).[15]

---

[15] Mr. and Ms. Fiergang; Mr. and Ms. Iwanowski; Mr. and Ms. Luray; Chanan and Adriana Levy; Benjamin Lowentritt and Lee Snyder; and Mr. Wang and Ms. Herndon devote several pages of their Opposition (ECF 132) to criticism of Columbia's supposed reliance on the preliminary injunction standard from *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193-96 (4th Cir. 1977), which has since been abrogated. ECF 132 at 13-16. But, they do so without citation to Columbia's submissions. Columbia has correctly articulated the preliminary injunction standard established in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) (ECF 116-1 at 6), and acknowledges that *Blackwelder Furniture Co.*, 550 F.2d 189, no longer states the correct standard. *See* ECF 116-1 at 7 n.2.

In a past case, *Columbia Gas Transmission, LLC v. 76 Acres of Land, More or Less, in Baltimore and Harford County, Maryland, et al.*, JFM-14-110, Columbia had incorrectly relied on *Blackwelder Furniture Co.*, 550 F.2d 189. *See* JFM-14-110, ECF 42-1 at 5. There, two of the defendants made a substantially identical objection to Columbia's reliance on *Blackwelder*

### a. Likelihood of success on the merits

In the context of this case, this element is coextensive with the MPSJ.   Given that Columbia is entitled to partial summary judgment, Columbia has shown that it will prevail on the merits.

### b. Irreparable Harm

A plaintiff seeking a preliminary injunction must make a clear showing that it will likely suffer irreparable harm in the absence of a preliminary injunction.   *Winter*, 555 U.S. at 20. Columbia advances three principal reasons why Columbia (and its customers) will suffer irreparable harm if it is not permitted to proceed immediately with construction of this portion of Line MB.

First, Columbia argues that Line MA is inadequate to provide its customers with reliable natural gas service.   Second, Columbia maintains that it will suffer financial loss if it does not complete Line MB by a contractual deadline of October 31, 2016.   Finally, Columbia submits that it will suffer irreparable harm if it is not permitted to commence construction of this segment of Line MB immediately, because the construction schedule cannot reasonably be altered.

At the hearing, John Rinkus, a Construction Superintendent for Columbia, testified that Line MA, which is over 50 years old, is the sole pipeline that supplies the greater Baltimore area and much of the Mid-Atlantic region.   According to Rinkus, the materials used to construct Line MA are not as durable as materials that are used today.   Rinkus testified that, to perform maintenance on Line MA, Columbia must take portions of Line MA out of service and that it can do so for only limited periods of time without disrupting the gas supply.

---

*Furniture Co.*, 550 F.2d 189.   ECF 53 at 11-14.   It seems that the defendants mentioned above merely assumed that Columbia repeated its error here.

In addition, Mr. Rinkus testified that construction must be completed between April 1 and November 1, after the end of winter and before its return.  During those months natural gas use is lower than it is during the winter months.  He explains in his Declaration, ECF 116-2 ¶ 12: "The November 1, 2016 construction deadline was selected to ensure that Columbia's construction activities do not interfere with the high-demand period for natural gas which commences in November of each year. November also usually marks the beginning for cold weather in this region and cold weather makes construction more difficult and less safe." *See also id.* ¶ 18.

The FERC Certificate is also relevant.  It explains, ECF 1-40 at 9 ¶ 26:

> Under the existing configuration, Columbia schedules service outages required for maintenance only during periods of moderate weather, when demands on its system for power generation and residential consumption are low, to minimize impacts to end users. The proposed facilities will enable Columbia to conduct more frequent maintenance and preventative pipeline inspections, which new PHMSA[16] rules will require, performing maintenance and inspections on one line while maintaining delivery requirements to its shippers on the other line.

According to the FERC Certificate, *id.* at 7 ¶ 20, "a second line on this part of Columbia's system would enable uninterrupted service to Columbia's customers during needed repairs.  The FERC Certificate also states, *id.* at 9 ¶ 27: "Staff's analysis also shows, among other things, that on a typical winter day . . . the proposed facilities . . . would increase hourly delivery capabilities and flexibility for service to Columbia's southern New Jersey and Washington, DC market areas, as well as to Baltimore, Maryland." Columbia avers that a failure

---

[16] PHMSA refers to the Pipeline and Hazardous Materials Safety Administration.  ECF 1-40 at 7 ¶ 21.  PHMSA operates under the aegis of the U.S. Department of Transportation. Pipeline and Hazardous Materials Safety Administration, Mission & Goals (Mar. 11, 2016, 1:51 PM), http://www.phmsa.dot.gov/about/mission.  According to the PHMSA, its "mission is to protect people and the environment by advancing the safe transportation of energy and other hazardous materials that are essential to our daily lives." *Id.*

to complete construction of Line MB "will jeopardize the delivery of natural gas to Columbia's customers and cause irreparable harm to customers throughout the area." ECF 160 at 2.

In addition, Columbia submitted a Declaration of Jacob Frederick, its Project Manager for Line MB. ECF 160-1 ¶ 4. He asserts, *id.* ¶ 7: "Columbia's Line MA is the only line Columbia has in the Baltimore County corridor." According to Mr. Frederick, Columbia "is under contractual obligation with [Baltimore Gas & Electric Company ('BG&E')] to complete construction of the Project and to have Line MB in service no later than October 31, 2016." *Id.* ¶ 12. Mr. Frederick explains that the completion of Line MB cannot be delayed because Line MB is part a "larger multistate modernization and replacement plan" (ECF 160-1 ¶ 5) in which funds for 2017 have already been allocated to "several projects in Pennsylvania, Ohio, and West Virginia . . . ." *Id.* ¶ 15; *see id.* ¶¶ 13-15.

Mr. Rinkus testified at the hearing that Columbia uses a construction technique called "linear construction," which is standard in the industry. He explained that linear construction can begin once Columbia has acquired the right to build on all properties in the segment. *See also* ECF 116-2 (Rinkus Decl.), ¶ 17; ECF 116-5 (McClain Decl.), ¶ 14. In his Declaration (ECF 116-2), Mr. Rinkus explains that this method of construction "proceed[s] from both ends of the proposed Pipeline." *Id.* ¶ 14. He states, *id.*:

> It is extremely inefficient, costly, and, at times, not feasible to construct the line in short segments, i.e., beginning on a property over which Columbia has the necessary easements, then demobilizing and remobilizing around a property over which Columbia does not have easements, and then returning later to construct that portion of the pipeline.

At the hearing, Columbia introduced a "Phase III (8-mile) Construction Schedule," which outlines Columbia's plans for the linear construction pertinent to this case. Plaintiff's Exhibit 7. It anticipates approximately seven months to complete the eight-mile segment of Line MB that is

at issue in this case. *Id.* Columbia describes eleven partially overlapping construction phases: "Survey Crew," "Clearing Crew," "Grading," "Stream Crossing," Ditching," Engineering," "Welding," "Coating and Lowering," "Padding and Backfilling," "Test," and "Final Clean Up." *Id.* With the exception of the "Test" phase, Columbia anticipates that each phase of construction will take approximately six to nine weeks. *Id.*

The Opposing Defendants contend that Columbia has failed to show irreparable harm. ECF 124 at 3-4, ECF 132 at 15, ECF 135-1 at 10. They advance four primary arguments.

First, they submit that Columbia has demonstrated no irreparable harm aside from delaying "Columbia's own self-serving construction schedule." ECF 135-1 at 10. The Opposing Defendants note that Columbia has already received one extension as to its FERC Certificate, through November 2017, and could request yet another extension. ECF 124 at 4; *see* ECF 132 at 15, ECF 135-1 at 10. Moreover, they argue, ECF 124 at 4: "The subject gas pipeline is a redundant line."

Second, defendants contend that Columbia has created the possibility of irreparable harm because "it has failed to obtain appraisals for the property rights it seeks and it delayed filing this action, even though FERC granted its certificate authorizing condemnation *more than two years ago*." ECF 124 at 4 (emphasis in original); *see* ECF 155 at 3 ("as Defendant, Garrison Forest, pointed out, Columbia could have filed the condemnation suits years ago to be in a position to get early possession of each parcel, so that when it finally obtained all of its construction permits, it could immediately proceed with access and construction. The urgency, which it now alleges, is a product of its own inattention to detail."); *see* ECF 135-1 at 10.

Third, they argue that mere difficulties in construction, such as the difficulties that Columbia identifies if it is not given immediate access to the easements, do not constitute

irreparable injuries. *See* ECF 132 at 15. In particular, the Opposing Defendants maintain, ECF 124 at 4: "If the loss or diminution of construction efficiency is sufficient to constitute 'irreparable harm' then there can be no conceivable pipeline project that would not qualify for immediate possession by injunction and the end run around Congress would be complete."

Finally, the Opposing Defendants submit, ECF 132 at 15: "There is no irreparable harm resulting from a delay of several months while this trial runs its course and Columbia's right to take the easements it seeks is litigated." *See* ECF 124 at 4.

As a preliminary matter, the defense suggestion that Columbia could litigate all of its claims and build Line MB before the expiration of the current FERC Certificate in November 2017, is unfounded. *See* ECF 1-41. As noted, although Columbia has dismissed claims against roughly half of the defendants, more than two dozen defendants remain, involving twenty parcels of property. Based on the testimony at the hearing, it is apparent that some of these parcels are residential and some of them are commercial. Moreover, although some of the defendants do not oppose Columbia's motions, they have not settled and they may still require trials to determine just compensation.

It would be far too cumbersome to proceed to one trial with more than two dozen defendants and twenty parcels. Even assuming that some defendants and properties could be joined for trial, Columbia would need to litigate several trials before it could even begin the lengthy construction process. *See Sage*, 361 F.3d at 828 (citing, with approval, the district court's conclusion that "separate hearings on compensation would be required for each of the eighty-five tracts involved"). It is not at all likely that this Court could accommodate, in the requisite time, the need for multiple trials, given the Court's busy docket. Indeed, the Court expedited the litigation of the pending motions, but it has countless other cases that also require

time and attention. And, I cannot overlook that some or all of the Landowners may appeal the outcome of the trials, which could add to the delay.

A substantially identical condemnation case involving Columbia, *Columbia Gas Transmission, LLC v. 76 Acres of Land, More or Less, in Baltimore and Harford County, Maryland, et al.*, JFM-14-110, illustrates the delay inherent in litigation of this sort. That case, filed in January 2014, originally involved approximately half of the number of defendants as are at issue here. *Id.*, ECF 1. I granted Columbia's Motion for Partial Summary Judgment (*id.*, ECF 74, ECF 75) and Motion for Immediate Possession of the Easement in June and August 2014, respectively. *Id.*, ECF 95. For trial, the case was transferred to Judge Motz, and in July 2015 he presided over a seven-day trial concerning just compensation to six landowners. *Id.*, ECF 226 at 1; *see also id.*, ECF 224 through ECF 231. Columbia and some of the defendants appealed to the Fourth Circuit. *See id.*, ECF 280, ECF 285, ECF 289. That appeal is pending.[17] In short, the contention that Columbia could litigate its claims and then build Line MB before November 2017 is fanciful.

I am also unpersuaded that Columbia has created the urgency requiring expedited relief by delaying in filing this action. *See* ECF 124 at 7. Columbia received its FERC Certificate on November 21, 2013. ECF 1-40 at 2. Yet, many defendants, including Mr. and Ms. Fiergang (ECF 133 at 4); Mr. and Ms. Luray (*id.* at 5); Mr. Wang and Ms. Herndon (*id.* at 7); and Mr. and Ms. Iwanowski (*id.* 8-9), maintain that Columbia first contacted them about the construction of Line MB during 2012—*before* Columbia even received its FERC Certificate.

Moreover, Columbia and the Landowners, including many of the Opposing Defendants, engaged in more than a year of negotiations concerning Columbia's proposed ROW Agreements.

---

[17] On March 7, 2016, Columbia filed a "Stipulation of Voluntary Dismissal" as to two of the defendants. JFM-14-110, ECF 299.

*See generally* ECF 133-1 through ECF 133-6.   As Mr. McClain testified at the hearing, Columbia reached ROW Agreements with about 230 of the roughly 300 landowners affected by the construction of Line MB.   Only after Columbia failed to reach agreements with the defendants did Columbia file suit.   Although the defendants were certainly under no obligation to accept Columbia's proposed ROW Agreements, that many of them participated in extensive pre-suit negotiations with Columbia belies the Opposing Defendants' contention that Columbia delayed in filing suit.

In addition, the defense argument that Columbia is likely to receive a further extension on its FERC Certificate is unavailing.   *See* ECF 124 at 4, ECF 132 at 15, ECF 135-1 at 10.   To be sure, Columbia has received a two-year extension as to its FERC Certificate.   ECF 1-41.   As Mr. Waire and Ms. Rodgers-Waire note (ECF 135-1 at 10), the "extension request was granted by FERC in a matter of days."   *See* ECF 1-41 at 2.   Yet, aside from the fact that FERC granted Columbia one extension, the Opposing Defendants proffer no evidence that a further extension is likely or even possible.   *See, e.g.,* ECF 162 at 2.   In particular, the Opposing Defendants provided no information about the administrative process by which FERC Certificates are extended.   In essence, they ask the Court simply to assume that FERC's extended deadline to complete Line MB can again be moved.   I decline to do so.

Even assuming that Columbia could obtain a further extension as to its FERC Certificate, requiring Columbia to wait to build Line MB would only exacerbate the prospect of irreparable harm to Columbia's customers, and thus to Columbia.   Line MA was constructed more than fifty years ago, using materials that are no longer state of the art.   It is the sole source of supply of natural gas for a substantial portion of the Baltimore and Mid-Atlantic regions.   Mr. Frederick states in his unrefuted Declaration, ECF 160-1 ¶ 7: "Columbia's Line MA is the only line

Columbia has in the Baltimore County corridor. Moreover, Line MA is the only pipeline in the area that directly connects to BG&E's network and has the capacity to fill BG&E's demand during peak use periods, including providing supplemental natural gas deliveries for emergency replenishment." *See also* ECF 1-40 ¶ 5 ("Columbia states that customers served from Line MA are susceptible to prolonged outages if service is required to be interrupted for repairs or maintenance because Columbia has only a single line in that corridor. Columbia further states that no other pipelines in the area directly connected to BG&E have capacity available during high flow periods to adequately provide emergency replacement gas deliveries.") Because there is no redundancy for Line MA, Columbia can only take Line MA out of service for comparatively brief periods of maintenance. *See* ECF 160-1 ¶ 10.

To be sure, as defendants note, there is no indication that Line MA will suffer an immediate, catastrophic failure. *See* ECF 162 at 2 ("the unsupported allegations of 'possibility' of some potential disaster do not equate with either 'necessity' nor 'emergency.'"). Yet, asking Columbia to delay in constructing Line MB is only likely to enhance the danger that Columbia's customers will be left without reliable, safe natural gas service.

Columbia has demonstrated that, without immediate access to the easements, it will be unable to complete Line MB before its current FERC Certificate expires in November 2017. *See* ECF 1-41. As outlined by Mr. Rinkus's testimony at the hearing, his Declaration (ECF 116-2), and Columbia's "Phase III (8-mile) Construction Schedule" (Plaintiff's Exhibit 7), Columbia requires at least seven months to complete the segment of Line MB at issue in this suit. And, this segment is not coextensive with the length of the entire pipeline. Mr. Rinkus also testified that construction must be completed between April 1 and November 1, because of the weather, and because it is the period of the year in which natural gas use is the lowest. Accordingly,

Columbia must either begin construction of Line MB immediately or wait until about April 1, 2017. And, Mr. Frederick's Declaration suggests that delay is not financially feasible for Columbia and would result in Columbia's breach of its contract with BG&E. *See* ECF 160-1 ¶¶ 12-15. Even disregarding Columbia's financial losses in the event of delay, as noted, it is highly unlikely, if not impossible, that Columbia could litigate its claims as to all of the defendants, including likely appeals, by April 2017, *i.e.*, the next season for construction. And, even if construction were to begin on April 1, 2017, that would leave virtually no margin to assure completion by the expiration of the FERC Certificate.

Courts in the Fourth Circuit have found similar circumstances sufficient to satisfy the "irreparable harm" element of the preliminary injunction test. For example, in *Sage*, 361 F.3d at 828, the Fourth Circuit affirmed the district court's finding of irreparable harm, noting that the plaintiff "would suffer undue delay" without a preliminary injunction "and that this delay would cause significant financial harm both to [plaintiff] and some of its putative customers." *Id.* at 828 (internal quotation marks omitted). The Court also noted, *id.* at 828–29 (internal citations omitted, alterations in *Sage*):

> Constructing a ninety-four-mile pipeline is a complex project that can only progress in phases. Certain portions of the project have to be completed before construction can begin on other portions. Therefore, as the district court recognized, "any single parcel has the potential of holding up the entire project." Continuing, the court said, "[t]o require ETNG[18] to build up to a parcel of land [it] do[es] not possess, skip that parcel, and then continue on the other side would prove wasteful and inefficient."

Similarly, in *Columbia Gas Transmission Corp. v. An Easement to Construct, Operate, & Maintain a 24-inch Gas Transmission Pipeline Across Properties in Greene Cnty.*, 2007 WL

---

[18] "ETNG" is an abbreviation for "East Tennessee Natural Gas Company, a regional gas transportation company. *Sage*, 361 F.3d at 818.

2220530 (W.D. Va. July 31, 2007), the court found: "Plaintiff will suffer irreparable harm [because] it will be unable to stay on schedule for the construction of the Pipelines and, therefore, may not be able to meet the time requirements contemplated by the FERC Certificate and will delay delivery of natural gas to customers who need it." *Id.* at *4.

Accordingly, I conclude that Columbia has demonstrated that it will suffer irreparable harm if it is not permitted to construct this portion of Line MB immediately.

### c. Balance of Equities

The Opposing Defendants argue that the equities weigh heavily in favor of the Landowners. *See* ECF 124 at 4-5; ECF 132 at 16. But, there is no indication in the record that they would suffer any greater harm if Columbia is granted immediate possession of the easements than if Columbia is not allowed access to the easements until the Court determines the amount of just compensation. Moreover, Columbia is "willing to deposit a sum of money representing Columbia's determined value of the Easements into a Court account or post bond as a condition of the requested relief." ECF 116-1 at 12.

As discussed, *infra*, before issuing an order as to the MIP, I will require Columbia to pay into the Registry of the Court, for each Landowner, a sum equal to Columbia's proposal valuation of each taking. No defendant has contested Columbia's valuations. The Landowners will be permitted to withdraw the sum applicable to his/her/its property before a final determination is made as to the amount of the just compensation. Accordingly, the Landowners' interests will be protected.

### d. Public Interest

"Congress passed the Natural Gas Act and gave gas companies condemnation power to ensure that consumers would have access to an adequate supply of natural gas at reasonable

prices." *Sage*, 361 F.3d at 830.   By virtue of the FERC Certificate, FERC found that the construction and operation of an expanded Line MB pipeline promoted these congressional goals.  Furthermore, improvements to aging infrastructure, pipeline safety, and service reliability serve the public interest.  At the hearing, the Opposing Defendants conceded that the provision of natural gas service is a public good.  Denying immediate access to and possession of the easements would result in a delay in construction, thus delaying the benefit of a pipeline that improves reliability and safety.  In turn, this would pose a risk of harm to the public.  *See Sage*, 361 F.3d at 826 (recognizing the need for natural gas supply as a "substantial public interest").

For all these reasons, Columbia has demonstrated its entitlement to the MIP.

## II.  Immediate Payment of Estimated Compensation and Security

Fed. R. Civ. P 71.1(j) requires the plaintiff in a condemnation action to "deposit with the court any money required by law as a condition to the exercise of eminent domain."  Similarly, Rule 65(c) of the Federal Rules of Civil Procedure requires that a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  And, as noted, Columbia has represented that it is "willing to deposit a sum of money representing Columbia's determined value of the Easements into a Court account or post bond as a condition of the requested relief."  ECF 116-1 at 12.

At the hearing, Columbia submitted Exhibit 8, which suggests the following amounts for a bond as to each property, to which no objections were lodged:[19]

| Landowner | Proposed Bond Amount |
| --- | --- |
| Judith Cardin | $8,000 |

---

[19] In earlier submissions, some defendants submitted ECF 124 at 2, stating: "Columbia has not had the property rights it seeks to acquire appraised . . . ."  Defendants, however, have neither objected specifically to the valuations in Exhibit 8 nor offered contrary valuations.

| | |
|---|---|
| Stephen & Avery Chandler (Trustees) | $8,650 |
| Dean & Jill Fiergang | $13,000 |
| Five Oaks | $103,000 |
| Garrison Forest | $6,000 ($3,000 as to each of the two tracts) |
| David & Jodi Grossman | $5,000 |
| Louis & Mary Hogan | $37,000 |
| Robert & Joan Iwanowski | $64,000 |
| Chanan & Adriana Levy | $58,000 |
| Benjamin Lowentritt & Lee Snyder | $39,000 |
| Stephen & Lisa Luray | $10,000 |
| Nicholas Sabie & Patricia Boyle | $7,800 |
| Linda & Stephen Scherr | $7,500 |
| Stevenson University | $6,000 ($3,000 as to each of the two tracts) |
| Jeffrey Strzelczyk | $3,000 |
| Timothy Waire & Cynthia Rodgers-Waire | $25,500 |
| Timothy Wang & Mary Herndon | $22,000 |
| Greenspring | $15,000 |
| **Total** | **$438,450** |

At the hearing, defense counsel argued that, as Columbia seeks immediate access to the easements to begin construction, Columbia should immediately pay the Landowners for the easements that Columbia seeks to acquire. *See* ECF 124 at 5 ("Columbia seeks immediate possession and use of the owners' properties, but wants to deny the owners concurrent compensation for the property rights being taken."). Columbia has not objected to making the funds immediately available to the Landowners.

I agree with the Opposing Defendants, who assert that, if the Court grants the MIP, there is no reason why the Landowners should wait until the conclusion of litigation to be paid the sums that Columbia has assigned as the value of the takings. *See Sage*, 361 F.3d at 829 ("In any event, as the district court observed, the early loss of use argument 'is blunted by [the

36

landowners'] right to draw down the money ETNG has deposited with the Court based on ETNG's appraisal,' that is, an independent appraisal obtained by the company."). As Columbia will be given immediate access to the easements, the Landowners are entitled to immediate relief for Columbia's acquisition of their property.

Accordingly, prior to the entry of an order granting the MIP, Columbia will be required to deposit into the Registry of the Court the total sum of $438,450, which constitutes the total of Columbia's valuation for the takings as to all remaining defendants. *See* Plaintiff's Exhibit 8. Thereafter, each respective Landowner(s) may immediately withdraw all or part of the funds in the following proportions:

| | |
|---|---|
| Judith Cardin | $8,000 |
| Stephen & Avery Chandler (Trustees) | $8,650 |
| Dean & Jill Fiergang | $13,000 |
| Five Oaks | $103,000 |
| Garrison Forest | $6,000 |
| David & Jodi Grossman | $5,000 |
| Louis & Mary Hogan | $37,000 |
| Robert & Joan Iwanowski | $64,000 |
| Chanan & Adriana Levy | $58,000 |
| Benjamin Lowentritt & Lee Snyder | $39,000 |
| Stephen & Lisa Luray | $10,000 |
| Nicholas Sabie & Patricia Boyle | $7,800 |
| Linda & Stephen Scherr | $7,500 |
| Stevenson University | $6,000 |
| Jeffrey Strzelczyk | $3,000 |
| Timothy Waire & Cynthia Rodgers-Waire | $25,500 |
| Timothy Wang & Mary Herndon | $22,000 |
| Greenspring | $15,000 |

The Opposing Defendants are forewarned that, if a final just compensation award is made for less than the amount withdrawn, they will be liable to Columbia for the excess.

The Court is of the view that the above mentioned deposit may not be sufficient security under Federal Rule of Civil Procedure 65(c) to adequately protect the Landowners, because the Landowners may ultimately be awarded additional just compensation at trial.   Therefore, Columbia shall post a cash bond or a surety bond, in the amount of One Hundred Thousand Dollars ($100,000.00), as protection against damages in excess of the deposited funds that may be awarded or adjudged against plaintiff.

### III. Conclusion

The Court will grant Columbia's Motion for Partial Summary Judgment.   And, the Court finds that Columbia has satisfied the requirements for a preliminary injunction granting it immediate possession of the easements.   However, as a predicate to the grant of Columbia's Motion for Immediate Possession, Columbia must deposit into the Court Registry the sum of $438,450, and post a bond, as outlined herein.   An Order follows.

Date:   March 25, 2016                              /s/
                                               Ellen Lipton Hollander
                                               United States District Judge